UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

ERIC DANIEL JANCZEWSKI,

    Defendant.

_____/

Case No. 17-20597

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE [30]**

    Eric Janczewski began using heroin and crack cocaine heavily after his son died in 2015, and he now suffers from a severe substance abuse disorder. Like millions of others before him, Janczewski tried to stop using drugs—he even moved across the country in an attempt to start fresh—but with limited resources, he failed. Things reached a flashpoint in 2017, when, at the direction of a drug dealer to whom he had become deeply indebted, Janczewski robbed a convenience store at gunpoint. The gun discharged by mistake, and Janczewski pleaded guilty to Using, Carrying and Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c). (ECF No. 17). Now, a little more than halfway through his seven-year sentence, Janczewski requests compassionate release. (ECF

1

No. 30). Ultimately, for the reasons described at the hearing on September 2, 2021—particularly Janczewski's lengthy disciplinary record and lack of a viable release plan—the Court has no choice but to **DENY** his Motion [30] without prejudice.[1] Nevertheless, the lamentable situation Janczewski faces[2] must be acknowledged.

Janczewski's Motion [30] comes at a significant moment: fifty years (almost to the day) since President Nixon called for an "all-out offensive" on drug abuse.[3] But several administrations and more than a trillion dollars later, the "War on Drugs" has utterly failed to curb addiction or its adjacent harms.[4] Perhaps it was never

---

[1] 18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A); *see United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

[2] At the hearing, when given a chance to make a statement in support of his Motion [30], Janczewski had this to say:
> I did [the] non-residential drug treatment [program] because it's the only thing I can actually do in here with having a detainer open[]. . . . [But] [m]y relapsing was the problem. I don't have any support in here. I don't have any programming. I don't have anything to push me -- like, I don't have a mentor. I don't have anything. Everything [that] I can do that I have done willingly in here has been jail house groups like [Narcotics Anonymous] with no other mentor, with no drug provider, no counselor, no psychologist. And [then] when . . . I start to talk to psychology, we would get locked down for four months for Covid [with] no programming. And I am sitting here out of mind and out of hands. . . . I have a problem with my drug habit[,] but I need help. This is not giving me help, your Honor.

(ECF No. 41, PageID.366).

[3] Brian Mann, *After 50 Years of the War on Drugs, 'What Good Is It Doing for Us?'*, NPR (June 17, 2021), https://www.npr.org/2021/06/17/1006495476/after-50-years-of-the-war-on-drugs-what-good-is-it-doing-for-us [https://perma.cc/C4JG-9725].

[4] Nathaniel Lee, *America Has Spent over a Trillion Dollars Fighting the War on Drugs. 50 Years Later, Drug Use in the U.S. Is Climbing Again*, CNBC (June 17, 2021), https://www.cnbc.com/2021/06/17/the-us-has-spent-over-a-trillion-dollars-fighting-war-on-drugs.html [https://perma.cc/JG5B-AMX8]; CHRISTOPHER J. COYNE & ABIGAIL R. HALL, FOUR DECADES AND COUNTING: THE CONTINUED FAILURE OF THE WAR ON DRUGS 7 (Cato Inst., Policy

intended to do so.[5] Whatever motives one ascribes to the initial decision to declare drug abuse "public enemy number one," we must concede that its principal results have been intensified anti-Black biases,[6] decimated communities,[7] and a society in which human beings are imprisoned at unprecedented rates.[8] Despite these outcomes, and indeed, despite significant evidence that incarceration is an ineffective means of combatting drug abuse,[9] the federal criminal punishment

---

Analysis No. 811, 2017), https://www.cato.org/sites/cato.org/files/pubs/pdf/pa-811-updated.pdf [https://perma.cc/6LJB-K2KZ].

[5] *Compare* Dan Baum, *Legalize It All: How to Win the War on Drugs*, HARPER'S MAG., Apr. 2016, at 22, https://archive.harpers.org/2016/04/pdf/HarpersMagazine-2016-04-0085915.pdf [https://perma.cc/HG23-ELEF] (recounting a now-infamous statement by John Ehrlichman, one of President Nixon's top advisors, that "[w]e knew we couldn't make it illegal to be either against the war or black, but by getting the public to associate the hippies with marijuana and blacks with heroin, and then criminalizing both heavily, we could disrupt those communities"), *with* Hilary Hanson, *Nixon Aides Suggest Colleague Was Kidding About Drug War Being Designed to Target Black People*, HUFFPOST (Mar. 25, 2016), https://www.huffpost.com/entry/richard-nixon-drug-war-john-ehrlichman_n_56f58be6e4b0a3721819ec61 [https://perma.cc/H9NX-4KPQ].

[6] *Harden v. Hillman*, 993 F.3d 465, 483 (6th Cir. 2021) (describing the ways in which the media campaign surrounding the War on Drugs crystalized the stereotype of the Black drug criminal).

[7] *United States v. Bannister*, 786 F. Supp. 2d 617, 653-55 (E.D.N.Y. 2011) (Weinstein, J.) (describing the consequences of mass incarceration on families and communities); Aaron Morrison, *50-Year War on Drugs Imprisoned Millions of Black Americans*, AP NEWS (July 23, 2021), https://apnews.com/article/war-on-drugs-75e61c224de3a394235df80de7d70b70 [https://perma.cc/86DU-VGSA]. *See generally* MICHELLE ALEXANDER, THE NEW JIM CROW: MASS INCARCERATION IN THE AGE OF COLORBLINDNESS (2010).

[8] *See* THE SENTENCING PROJECT, FACT SHEET: TRENDS IN U.S. CORRECTIONS 1, 3 (2021), https://www.sentencingproject.org/wp-content/uploads/2021/07/Trends-in-US-Corrections.pdf [https://perma.cc/9LZ7-XDC8]; *see also* U.S. GOV'T ACCOUNTABILITY OFF., GAO-12-743, BUREAU OF PRISONS: GROWING INMATE CROWDING NEGATIVELY AFFECTS INMATES, STAFF, AND INFRASTRUCTURE (2012), https://www.gao.gov/assets/gao-12-743.pdf [https://perma.cc/88NE-FGDJ].

[9] *E.g.*, Redonna K. Chandler et al., *Treating Drug Abuse and Addiction in the Criminal Justice System: Improving Public Health and Safety*, 301 J. AM. MED. ASS'N 183, 189 (2009) ("Punishment alone is a futile and ineffective response to drug abuse, failing as a public safety

3

system continues to treat addiction and its consequences as moral failures that can be deterred through sanction, rather than issues of public health.

To be sure, Janczewski was not sent to prison for using drugs, but his incarceration, like that of many others, was a direct and predictable consequence of addiction.[10] Did it have to be? Might things have turned out differently if the United States invested in drug treatment and prevention with the same fervor that it invests in drug enforcement and punishment?[11] We'll likely never know. What we do know is that Janczewski's continued imprisonment is doing little good for him or society, and the relentlessness of COVID-19 is only making matters worse. Since the pandemic began, people whose crimes were fueled by addiction have had even less

---

intervention for offenders whose criminal behavior is directly related to drug use."). *See generally* Francis T. Cullen et al., *Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 PRISON J. 48S, 60S (Supp. 2011).

[10] National surveys of state prisoners and jail inmates suggest that nearly a quarter of offenses are committed because of addiction. JENNIFER BRONSON ET AL., U.S. DEP'T OF JUST., BUREAU OF JUST. STAT., DRUG USE, DEPENDENCE, AND ABUSE AMONG STATE PRISONERS AND JAIL INMATES, 2007-2009, at 6 (2017), https://bjs.ojp.gov/content/pub/pdf/dudaspji0709.pdf [https://perma.cc/3KPZ-E5PW]. "If these figures hold for the entire prison and jail population, that means over 473,000 people are behind bars for seeking drugs." Wendy Sawyer, *BJS Report: Drug Abuse and Addiction at the Root of 21% of Crimes*, PRISON POL'Y INITIATIVE (June 28, 2017), https://www.prisonpolicy.org/blog/2017/06/28/drugs/ [https://perma.cc/F4NV-WFNX].

[11] *E.g.*, Barry M. Lester et al., *Substance Use During Pregnancy: Time for Policy to Catch Up with Research*, HARM REDUCTION J., Apr. 20, 2004, at 39 (noting that "[t]he [federal] drug control budget . . . more than doubled in the [late 1990s and early 2000s], yet the proportion of the budget devoted to treatment and prevention [remained] unchanged"); James Cooper, *The United States, Mexico, and the War on Drugs in the Trump Administration*, 25 WILLAMETTE J. INT'L L. & DISP. RES. 234, 256-57 (2018) ("Despite . . . campaign promises, the Obama administration spent [its] drug budget mainly on law enforcement instead of prevention and treatment programs. . . . To date, the United States Budget still shows huge disparities between money spent on drug interdiction and counter drug activities when compared to the budget for prevention programs.").

access to rehabilitative programs, including drug treatment, than normal.[12] Drugs, on the other hand, have remained readily available, despite severe limitations on outside access to BOP facilities.[13] And even though the First Step Act directed the BOP to expand access to Medication Assisted Treatment ("MAT") for people addicted to opioids,[14] only 268 people—less than two percent of the more than 15,000 the BOP estimates are eligible—are currently enrolled in the MAT Program.[15] Janczewski is not one of them.

What is to become of him? Under § 3553(a), the Court cannot grant release. Doing so would place Janczewski into the exact same set of circumstances that led to his criminal conduct in the first place, without any means of keeping him, or others, safe. But the Court also has serious doubts that his continued incarceration will yield any benefit. Indeed, it appears to be making things worse. Unless there are

---

[12] U.S. GOV'T ACCOUNTABILITY OFF., GAO-21-502, BUREAU OF PRISONS: BOP COULD FURTHER ENHANCE ITS COVID-19 RESPONSE BY CAPTURING AND INCORPORATING LESSONS LEARNED 34-35 (2021), https://www.gao.gov/assets/gao-21-502.pdf [https://perma.cc/U9B8-JX9J]. Eighteen months into the pandemic, nearly every BOP facility, including USP Pollock, where Janczewski is held, is still operating at "Level 3," requiring "intense modifications" to operations and limitations on programming. *COVID-19 Coronavirus*, FED. BUREAU PRISONS, https://www.bop.gov/coronavirus/ [https://perma.cc/2YZG-ZZC9] (last updated Sept. 15, 2021).

[13] Beth Schwartzapfel & Jimmy Jenkins, *Inside the Nation's Overdose Crisis in Prisons and Jails*, MARSHALL PROJECT (July 15, 2021), https://www.themarshallproject.org/2021/07/15/inside-the-nation-s-overdose-crisis-in-prisons-and-jails [https://perma.cc/8MBL-4HMX].

[14] First Step Act of 2018, Pub. L. No. 115-391, § 407, 132 Stat. 5194 (2018).

[15] Beth Schwartzapfel, *These Meds Prevent Overdoses. Few Federal Prisoners Are Getting Them*, MARSHALL PROJECT (Aug. 10, 2021), https://www.themarshallproject.org/2021/08/10/these-meds-prevent-overdoses-few-federal-prisoners-are-getting-them [https://perma.cc/7YNC-RN5R].

significant changes to the status quo, such as Janczewski participating in the Residential Drug Abuse or MAT Program, he will likely be released to supervision in the normal course, still addicted, and facing even greater pressures[16] than those that led to his incarceration in the first place. Ultimately, the Court is without options, and it regrets its role in perpetuating this system that will continue to fail people like Janczewski absent transformative change.

**IT IS ORDERED** that Janczewski's Motion for Compassionate Release [30] is **DENIED**.

**SO ORDERED.**

Dated: September 16, 2021

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

---

[16] *See* Cameron Kimble & Ames Grawert, *Collateral Consequences and the Enduring Nature of Punishment*, BRENNAN CTR. FOR JUST. (June 21, 2021), https://www.brennancenter.org/our-work/analysis-opinion/collateral-consequences-and-enduring-nature-punishment [https://perma.cc/2LL8-S8B9] ("[A] prior criminal conviction is devastating to an individual's earning prospects, but a prison record all but ensures a lifetime straddling the poverty threshold."); Jaboa Lake, *Criminal Records Create Cycles of Multigenerational Poverty*, CTR. FOR AM. PROGRESS (Apr. 15, 2020), https://www.americanprogress.org/issues/poverty/news/2020/04/15/483248/criminal-records-create-cycles-multigenerational-poverty/ [https://perma.cc/L5MD-9BH7].